James D. CROW et al., Petitioners,

v.

**HOME SAVINGS ASSOCIATION OF DALLAS COUNTY, Respondent.**

No. B–4925.

Supreme Court of Texas.

April 30, 1975.

Rehearing Denied May 28, 1975.

Lyne, Klein, French & Womble, Erich F. Klein, Jr. and Ron Edmondson, Dallas, for petitioners.

Haynes & Boone, Robin P. Hartmann and Donald C. Templin, Dallas, for respondent.

STEAKLEY, Justice.

This is a usury case. Petitioners here, who instituted the suit, are James D. Crow and two of his entities, K. C. Corporation and Buckner Plaza Apartments, Ltd. Respondent is Home Savings Association of Dallas County. The claim arises out of a loan consummation transaction of October 27, 1971, and the payment to Home of the sum of $24,985 under the circumstances and in the manner later detailed. Upon trial, the jury found that one of the transactions on October 27, 1971, in which the First National Bank in Dallas loaned Crow

the sum of $150,000, was a device for accomplishing a loan from Home to Crow; and that the payment to Home of the sum of $24,985 was compensation for the use or detention of this sum of $150,000 and not for services rendered Crow by Home.[1] The trial court entered judgment for Crow in the sum of $199,970 in usury damages and $30,000 in attorney's fees. See Article 5069–1.06(2), Vernon's Annotated Texas Civ. Statutes. The Court of Civil Appeals reversed and rendered judgment that Crow take nothing. 514 S.W.2d 160. It was the view of the Court of Civil Appeals that under the evidence the transaction in question was a bona fide loan by the First National Bank in Dallas, the repayment of which was guaranteed by Home, and hence not subject to the penalties of usury under the established rule of Greever v. Persky, 140 Tex. 64, 165 S.W. 2d 709 (1942). We agree and affirm.

The facts are reviewed in detail in the opinion of the Court of Civil Appeals and will be restated here only as necessary. Crow was the owner of land in northeast Dallas upon which he projected the construction of an apartment complex to be known as Buckner Plaza. A financing loan of approximately $2,498,500 was required. In May, 1970, Crow applied to Modern American Mortgage Company for a loan in such amount to be insured by the Federal Housing Administration. Modern American agreed to make the loan, the closing of which was delayed for eighteen months incident to obtainment of the FHA commitment. Approximately two months prior to closing, Modern American informed Crow that it would not furnish letters of credit required by the FHA notwithstanding its previous agreement to do

so. Other letters of credit tendered by Crow were refused by Modern American. Crow testified that he then began searching for a substitute mortgagee and contacted Home, among others, in an effort to obtain financing. He wrote Home under date of October 20, 1971, to the attention of Jim T. Terry, President, and referencing "Buckner Plaza, FHA 112–35160–PM" as follows:

In reference to the above mentioned project, we would like to solicit your services in helping to arrange for the initial closing and funding on this project. If you are successful in helping us carry this project to the initial closing, we will pay your company a fee of $24,985.00.

Along with this letter, I will be furnishing you a copy of all the documents pertaining to the above mentioned project and ask that you proceed as fast as possible in getting all the final arrangements made.

A sum of $24,985.00, representing 1% of the loan, had been deposited by Crow with Modern American as earnest money. Soon thereafter Crow renewed his efforts to obtain the project loan from Modern American and to this end sought to utilize a payment bond to be issued on his K. C. Corporation. Apparently in response to this, Modern American agreed to accept the formerly rejected letters of credit upon the understanding that such payment bond would be obtained. But as to this, the bonding company required that K. C. Corporation have at least $150,000 in working capital and Crow unsuccessfully sought a loan in such amount from the First National Bank in Dallas. At this point Crow appears to have once again turned to

---

1. The jury findings were these:

SPECIAL ISSUE NO. 1
Do you find from a preponderance of the evidence, that the transaction of October 27, 1971, with the First National Bank was a device for accomplishing a loan from Defendant Home Savings Association of Dallas?
Answer "Yes" or "No."
ANSWER: Yes

SPECIAL ISSUE NO. 2
Do you find, from a preponderance of the evidence, that Defendant Home Savings Association of Dallas was paid $24,985.00 as compensation for the use or detention of $150,000.00 and not for services?
Answer "Yes" or "No."
ANSWER: Yes

Home and the following sequence of events is undisputed. Jim T. Terry, president of Home, instructed Crow to go to the office of Tack Thomas, a loan officer for the First National Bank, and on October 27, 1971, Crow there signed a promissory note in the sum of $150,000 payable in thirty days to the First National Bank in Dallas, and providing for interest from date at the rate of 7% per annum. Home guaranteed in writing payment of the loan and in addition secured its payment by pledging an existing certificate of deposit in the sum of $150,000 owned by Home and issued by the First National Bank. The proceeds of the loan were deposited to the account of the K. C. Corporation, subject to the condition of withdrawal only with the approval of Home. Thereafter, on November 3, 1971, the loan transaction with Modern American was consummated. Among the numerous finalizing details on such date, Modern American issued its check to Home in the sum of $24,985, the amount of Crow's deposit with Modern American, bearing the notation:

> FHA Project No. 112–35160–PM
> Buckner Plaza
> Dallas, Texas

> Fee for Services Rendered in Connection with Origination of Mortgage.

Later, by means of a check dated November 3, 1971, in the sum of $150,233.33, Buckner Plaza Apartments, Ltd., over the signature of Crow, paid the note to First National Bank, with accrued interest.

■ This suit against Home for usury penalties was filed by Crow under date of August 17, 1973, approximately twenty-one months after the transactions in question. The suit is not against the First National Bank in Dallas, the actual lender, claiming a usurious loan by adding the interest rate in the note with the commission paid Home. It is not alleged or claimed that Home was the agent of the lender Bank or that Home and the Bank were otherwise engaged in any character of joint enterprise. Nor does Crow seek a recovery from Home of the commission of $24,985 upon any claim of duress, or fraud, or breach of contract, or failure of consideration. This suit is for usury penalties and the problem to be resolved is whether the Court of Civil Appeals correctly determined there is no evidence of probative force to support the jury findings noted in the forepart of this opinion. It is settled, of course, that in such an inquiry the evidence is to be viewed most favorably to the findings. See C. & R. Transport, Inc. v. Campbell, 406 S.W.2d 191 (Tex.1966).

■ Home can be held to have overcharged for the use and detention of money only if in substance, if not in form, it was Home's money, and not the money of the First National Bank , in Dallas, that was used and detained by Crow. Greever v. Persky, *supra*, affirms that an agent or broker may lawfully charge a commission for his services in negotiating a loan with a third party; and that one may sell his credit to a borrower for a consideration, and to that end endorse, guarantee or become surety for the payment of a loan made to the borrower by a third person. In such instances the charges are not for the use and detention of money. A major emphasis in Greever v. Persky, *supra*, in delineating between a legal and a usurious transaction, and the validity of charges for the pledging of credit or collateral with a third party, is whether the party making such charges "himself lends to the borrower." Cf. Stacks v. East Dallas Clinic, 409 S.W.2d 842 (Tex.1966), in which this Court, in rejecting a claim of usury, emphasized that the charged parties did not lend any money to the debtor. It is a fundamental principle governing the law of usury that it must be founded on a loan or forbearance of money; if neither of these elements exist, there can be no usury. Meaker v. Fiero, 145 N.Y. 165, 39 N.E. 714 (1895). When one negotiates a loan through a third party with a money lender, and the latter bona fide lends the money at a legal rate of interest, the contract as to the actual lender is not made usurious

merely by the fact that the intermediary charges the borrower with a heavy commission, the intermediary having no legal or established connection with the lender. Texas Loan Agency v. Hunter, 13 Tex. Civ.App. 402, 35 S.W. 399 (1896, no writ).

■■ Crow's claim here, then, is, as it must be, that the Bank was not the lender but that the loan was actually made by Home. It is argued that this is shown by the testimony of Crow that he asked Home to make the loan of $150,000 and understood that Home and not the Bank made the loan; that he did not know that the Bank was lending the money; that he did not request Home to secure or guarantee the loan from the Bank or agree to pay Home a fee of $24,985 for its services in connection with the Bank loan; and that the Bank assumed no risk in making the loan because of Home's collateralizing guarantee. Sapphire Homes, Inc. v. Gilbert, 426 S.W.2d 278 (Tex.Civ.App.1968, writ ref'd n.r.e.) is strongly urged as in point. We do not agree. The Court of Civil Appeals there upheld the conclusion of the trial court upon ample evidence that in the series of transactions in question the roles played by Sapphire (an insolvent guarantor) and Chill Juice (the lender in name but which had no assets and had never functioned as a corporation), both of which were corporate entities under the common control of the two individuals who arranged the questioned loan, were purely chimerical. The circumstances here are entirely different. It is undisputed that the First National Bank in Dallas is a separate and distinct lending institution and there is no claim that the Bank and Home were under joint control, or were engaged in a joint adventure with a mutuality of interest, or were acting in business collusion to accomplish a usurious arrangement. It is further undisputed that Crow signed the note in the sum of $150,000 payable to the Bank and received a corresponding deposit by the Bank to the account of Crow's K. C. Corporation; and that Crow paid off the loan to the Bank with accrued legal interest. The evidence does not tend to prove that the loan transaction was nonetheless a device and subterfuge for the use and detention by Crow of money advanced by Home, or that the loan was not "passed on to a third party" by Home in the words of Greever v. Persky, *supra*, or that the Bank did not in fact make a bona fide loan. Crow's testimony as to his understanding of the transaction, and what he expected, or thought, or assumed, or the assurances he said he received, is not probative of usury. As before noted, for the usury laws to apply, there must be an overcharge by a lender for the use and detention of the lender's money. The judicial inquiry is whether or not this has occurred. Questions of subterfuge or, as also phrased, of a cloak to avoid the usury law, are in point to the determination of this ultimate issue. In the undisputed situation here the loan transaction was with the Bank and the Bank charged and received legal interest. The charge made by Home was for services rendered in connection with the loan. The charge thus made and paid to Home by Crow, regardless of its reasonableness or not, cannot form the basis for a usury penalty against Home.

It should be made clear, however, that we are aware of the possibilities of usurious subterfuge in a transaction comparable in appearances to the one between these parties. The evidence in this record does not permit us to uphold the findings of the jury. The record does not disclose, for example, the dates or maturities of the certificates of deposit or contain information concerning transfers of funds and other transactions between Home and the Bank. There is no proof establishing, or from which it might fairly be inferred, that Home transferred to the Bank funds with which to make the loan, or obligated itself to leave on deposit with the Bank funds that would otherwise have been subject to withdrawal.

The judgment of the Court of Civil Appeals is affirmed.

GREENHILL, C. J., not sitting.