Alvin B. WALKER, Appellant,

v.

Elwood ROSS, Appellee.

No. 17779.

Court of Civil Appeals of Texas, Fort Worth.

Feb. 18, 1977.

Rehearing Denied March 25, 1977.

Robert O'Donnell, Dallas, for appellant.

Berman, Fichter & Mitchell, and Harold B. Berman and W. W. Mitchell, II, Dallas, for appellee.

OPINION

SPURLOCK, Justice.

This is a usury case. Elwood Ross loaned Alvin B. Walker $50,000.00. Walker signed a note for $55,000.00 dated May 26, 1972, and due November 24, 1972. Ross sued on the note. Walker defended in part on the grounds that the difference of $5,000.00 represented usurious interest. The jury found, based on the court's instructions, that the disputed $5,000.00 was a charge

made by Ross for services rendered in securing the loan and/or for other unrelated work Ross had done for Walker and/or to compensate Ross for losses on still another transaction; and the charge was not for interest. Judgment was rendered for Ross.

We reverse and remand.

Ross filed suit against Walker on a note in the principal amount of $55,000.00, plus interest at 10% per annum from maturity plus attorneys' fees. Walker answered in part that he was entitled to credits; that he had borrowed only $50,000.00; that the additional $5,000.00 was interest charged by Ross for loaning the money; that he agreed to pay the 8½% interest charged Ross by the First National Bank of Lancaster on a loan of $50,000.00 which Ross had at that bank; that Ross borrowed this $50,000.00 from the First National Bank of Lancaster to loan this amount to Walker and this resulted in a charge to Walker of 28.5% interest per annum.

By way of counterclaim, Walker sought judgment to extinguish the original obligation because he had been charged more than double the lawful rate of interest and to recover against Ross the sum of $13,-394.00.

Ross, by an amended petition, alleged that the $5,000.00 charged Walker was for services rendered in the nature of promotional work, for the loss he had sustained in a real estate transaction (to be referred to as the Mudge house transaction), and for services rendered in procuring the loan from the First National Bank of Lancaster (hereinafter referred to as Lancaster Bank).

The case was submitted to the jury on only two special issues, together with a definition of interest and the court's instruction in connection therewith. The special issues and the jury's findings were as follows:

"Issue No. 1. Do you find from a preponderance of the evidence that the sum of $5,000.00 that Walker agreed to pay Ross was to compensate Ross for Ross' services in securing the First National Bank of Lancaster loan, and/or for Ross' advertising and promotional services to Walker, and/or to compensate Ross for his loss on the Mudge house? . . . Answer: We do.

" 'Interest' is defined as the compensation allowed for the use or forebearance [sic] or detention of money. You are advised however that an agent or broker may lawfully charge a commission for his services in negotiating a loan with the third party and that one may sell his credit to a borrower for a consideration; in such instances the charges are not for the use and detention of money.

"Issue No. 2. Do you find from a preponderance of the evidence that on May 26, 1972, the Plaintiff Ross charged the Defendant Walker $5,000.00 interest on the loan of $50,000.00? . . . Answer: We do not."

We will first discuss the real estate transaction referred to in special issue no. 1. Walker had built a house in the Franklin Hills Addition which he was trying to sell. Ross approached Walker and requested that he sell the house to Don Mudge, who was a sales manager for one of Ross' companies. Mudge could not finance the transaction because of his lack of financial strength. Walker was unwilling to accept a second lien, but he agreed to sell the house to Mudge provided Ross would endorse and guarantee Mudge's note payable to Walker secured by a second lien. Ross agreed to endorse the note, provided Walker would pay him $2,500.00 for the endorsement. The real estate transaction was consummated in accordance with the above agreement. Mudge defaulted on the note payable to Irving Savings secured by the first lien and the note payable to Walker secured by the second lien endorsed by Ross. The note endorsed by Ross was in the amount of $24,000.00 plus some accrued interest. Ross borrowed money from the Lewisville State Bank to pay the note secured by the second lien. Later, Mudge conveyed the house to Ross and agreed to pay him for any losses sustained in connection with the sale of the house to him. The parties, at a later date, agreed that the sum of $7,244.59 was the amount of the loss sustained by Ross.

Mudge then paid Ross this sum which completely settled and paid in full to Ross any losses he had sustained on the house. Ross obtained a long-term loan on the house after he had acquired it from Mudge. He then sold the house to Sutton. The details of that transaction will be discussed later.

Walker approached Ross to borrow $50,-000.00 from him for an unrelated matter. Ross agreed to make the loan.

Walker testified that the terms of the loan were that Ross would borrow the money from a bank provided Walker would pay him $5,000.00 plus whatever interest the lending bank charged Ross. The agreement was made. Ross borrowed $50,000.00 at 8½% interest per annum from the Lancaster Bank, signed a note in that amount dated May 24, 1972, due November 24, 1972. Ross then endorsed the check representing the proceeds of the loan from the bank and handed it to Walker. Walker then signed a note payable to Ross in the sum of $55,-000.00 dated May 26, 1972, due November 24, 1972. Walker testified this was the only agreement that was made.

Ross admitted that he advanced only $50,000.00 to Walker. He testified that he charged Walker $5,000.00 (1) for obtaining the loan, (2) as compensation for promotional work Ross had done for Walker, and (3) for losses he had sustained in connection with the Mudge house transaction. He also admitted Walker had contracted with him to pay the 8½% interest charged by the Lancaster Bank on the $50,000.00 loan.

Walker assigns three points of error. The second and third points assert the trial court erred in submitting these issues together with the definition of interest.

Walker takes the position that the definition of interest contaminates both issues. In effect the court instructed the jury that although the bank did not loan any money to Walker and the loan was made directly from Ross to Walker, as the note reflects, nonetheless, under these circumstances the charge Ross made to Walker for the borrowing of the money was not interest. The instruction further implies that under the circumstances of this case Ross was simply a broker or a middle man.

Walker objected to the court's charge in writing, but the record does not reflect the court's ruling thereon. In his brief, however, Walker states: " . . . Prior to the submission of this charge to the Jury, the Appellant objected to the charge by dictating the same to the Court reporter and carried forward such objections in the Appellant's Motion for New Trial. The objections to the charge were over ruled [sic] by the Trial Judge . . . ." This statement was not challenged by appellee. This court may and does accept this statement as being correct. Tex.R.Civ.P. 419; *City of Dallas v. Holcomb*, 381 S.W.2d 347 (Tex.Civ. App.—Dallas), *aff'd* 383 S.W.2d 585 (Tex. 1964).

The pertinent statutes are Tex.Rev.Civ. Stat.Ann. art. 5069, § –1.01, –1.02, –1.04, –1.06 and –8.04 (1971), portions of which are quoted below:

1.01. "Definitions

"(a) 'Interest' is the compensation allowed by law for the use or forbearance or detention of money . . . .

" . . .

"(d) 'Usury' is interest in excess of the amount allowed by law.

" . . . "

1.02. "Maximum rates of interest

"Except as otherwise fixed by law, the maximum rate of interest shall be ten percent per annum. A greater rate of interest than ten percent per annum unless otherwise authorized by law shall be deemed usurious. All contracts for usury *are contrary to public policy and* shall be subject to the appropriate penalties prescribed in Article 1.06 of this Subtitle." (Emphasis added).

" . . . "

1.04. "Limit on rate

"The parties to any written contract may agree to and stipulate for any rate of interest not exceeding ten percent per annum on the amount of the contract; and all other written contracts whatsoever, except those

otherwise authorized by law, which may in any way, *directly or indirectly,* provide for a greater rate of interest shall be subject to the appropriate penalties prescribed in this Subtitle." (Emphasis added).

"    .    ."

1.06. "Penalties

"(1) Any person who *contracts for, charges or* receives interest which is greater than the amount authorized by this Subtitle, shall forfeit to the obligor twice the amount of interest *contracted for, charged or* received, and reasonable attorney fees fixed by the court provided that there shall be no penalty for a violation which results from an accidental and bona fide error." (Emphasis added).

Article 5069—1.01 et seq. was effective October 1, 1967. Article 5069—50.03 repealed the earlier provision (Tex.Laws 1963, Ch. 205, § 28 at 569) which allowed a person or his legal representative to recover double the amount of usurious interest *received.*

Tex.Const. art. XVI, § 11, provides in pertinent part that in the absence of legislation fixing maximum rates of interest, "All contracts for a greater rate of interest than ten percentum per annum, shall be deemed usurious   .   .   .."

The legislature has provided rules to aid the courts in the construction of its statutes. They are as follows:

Tex.Rev.Civ.Stat.Ann. art. 10 (1969) General rules.

"The following rules shall govern in the construction of all civil statutory enactments   .   .   ..

"    .    .    .

"6. In all interpretations, the court shall look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil and the remedy.

"    .    .    .

"8. The rule of the common law that statutes in derogation thereof shall be strictly construed shall have no application to the Revised Statutes; but the said statutes shall constitute the law of this State respecting the subjects to which they relate; and the provisions thereof shall be liberally construed with a view to effect their objects and to promote justice."

The usury statute is penal in nature. In addition to the imposition of civil penalties, it provides for criminal penalties. Tex.Rev. Civ.Stat.Ann. art. 5069, § 1.06(2) and § 8.02 (1971).

Tex.Penal Code Ann. § 1.05 (1974)—Construction of Code—provides:

"(a) The rule that a penal statute is to be strictly construed does not apply to this code. The provisions of this code shall be construed according to the fair import of their terms, to promote justice and effect the objectives of the code.

"(b) Unless a different construction is required by the context, Sections 2.01, 2.02, 2.04, 2.05, and 3.01 through 3.12 of the Code Construction Act (Article 5429b—2, Vernon's Texas Civil Statutes) apply to the construction of this code."

■ In determining whether a loan transaction is usurious, the form is disregarded and the substance is investigated. *Schmid v. City Nat. Bank of Wichita Falls,* 132 Tex. 115, 114 S.W.2d 854 (1938).

■ It is clear that where the face amount of the loan is greater than the amount actually advanced, the principal upon which the lender may charge interest is the amount advanced, and the difference (where there are no valid charges) is considered prepayment of interest. *Nevels v. Harris,* 129 Tex. 190, 102 S.W.2d 1046 (1937); *Schmid v. City Nat. Bank of Wichita Falls, supra.*

The issue in the case before us is primarily whether Ross was a broker or a lender. If he is a broker in the sense that he is a middle man who negotiates a bargain between other persons, then his fee for obtaining the loan is not interest. If he himself is the lender, then his fee is compensation for the use, forbearance, or detention of money and is interest.

In *Crow v. Home Savings Association of Dallas County,* 522 S.W.2d 457 (Tex.1975) that court had before it a case in which the

borrower paid $24,985.00 to Home Savings in return for Home Savings' guaranteeing a 30-day loan from the First National Bank *to* Crow of $150,000.00 plus 7% interest. Home Savings, in addition to guaranteeing payment of the loan, pledged a certificate of deposit of $150,000.00 as security for the payment of the loan. In that case the loan was made directly from the First National Bank *to* Crow. That court held that Home Savings could be held to have overcharged for the use and detention of money only if in substance, if not in form, it was Home Savings' money and not the money of the First National Bank which was used and detained by Crow. That court relied upon *Greever v. Persky*, 140 Tex. 64, 165 S.W.2d 709 (1942) in stating ". . . that an agent or broker may lawfully charge a commission for his services in negotiating a loan with a *third party*; and that one may sell his credit to a borrower for a consideration, and to that end endorse, guarantee or become surety for the payment of a *loan made to the borrower by a third person*. . . ." 522 S.W.2d at 459 (Emphasis added).

We observe that in the instant case the trial court in its instructions to the jury concerning what constitutes interest, copied only a part of the above holding in *Crow* down through the word "consideration" and omitted the balance of the statement of the law that followed. In that portion of its statement the court in *Crow* emphasized that in order to be deemed an agent or broker, a charge for the sale of one's credit must have been made in consideration for the endorsement, guarantee or service as surety for the payment of a *loan made to the borrower by a third person*.

In the case before us it is undisputed that no loan was made by a third person directly to Walker. The bank did not make the loan to Walker. Instead, the bank made a loan to Ross, and Ross then made a loan to Walker.

In the *Crow* case the court further emphasized the fact that if a person acts *solely* as a broker in bringing a borrower and a lender together, the charge made for the brokerage, even though it may be a heavy commission, is not a charge made for the use or detention of money and is not interest. In this respect the court stated: ". . . As before noted, for the usury laws to apply, there must be an overcharge by a *lender* for the use and detention of the *lender's* money. . . ." (Emphasis added). That court further noted that the record did not disclose any proof that Home Savings had transferred any of its funds into the bank's account, that the bank had thereby indirectly loaned any of Home Savings' money, or that there was any other subterfuge.

Under the undisputed facts in the case before us Ross was not a broker. The court below then compounded its error when it omitted that portion of the statement of the law in *Crow* concerning loans made to the borrower by a third person. The rule of law in the *Crow* case is not applicable to the case before us.

The court should have instructed the jury in accordance with the law announced in *Lafferty v. A. E. M. Developers and Builders Co.*, 483 S.W.2d 279 (Tex.Civ.App.—San Antonio 1972, writ ref'd n. r. e.), which we will now discuss. In *Lafferty*, the borrower contacted Ruffino, a middle man, to obtain his services in helping arrange a loan. The middle man or broker contacted Lafferty as a prospective lender. Lafferty then borrowed $7,500.00 from the Highland Park State Bank, loaned $7,000.00 of the proceeds of this loan to the borrower, and retained $500.00, of which he paid a part to Ruffino. It was contended that the $500.00 was a fee for the use of Lafferty's credit and other services rather than interest.

That court quoted from *Greever v. Persky, supra,* to the effect that a pledge by a party of " ' . . . his credit or collateral with a third party in order to obtain the funds which he himself lends to the borrower does not authorize him to charge the commission in addition to the highest legal rate of interest'." (Citing cases). The court then held that ". . . The loan was from Lafferty to appellee, and the fact that Lafferty borrowed the money on his

own credit did not authorize him to charge a commission plus maximum interest for doing so. . . . " 483 S.W.2d at 281.

■ In the case before us the charge made by Ross for obtaining a loan from the bank to Ross and then lending it to Walker is interest. The source of the money loaned is immaterial. It makes no difference whether Ross loaned Walker the money from Ross' savings account, checking account, or money that he had borrowed. Therefore, the instruction the court gave the jury was erroneous in that it instructed the jury under the undisputed facts detailed above that, in effect, Ross could be considered an agent or broker and could lawfully have charged a commission for his services in negotiating the loan from the bank to himself. This error was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment.

Appellant, by his first point of error apparently attempts to assert that there is "no evidence" to support the jury's verdict or that the evidence is "insufficient" to support it. His point of error standing alone does not apprise this court whether he is asserting "no evidence" or "insufficient evidence" or both as points of error.

An examination of his statement and argument indicates that he is probably making both contentions. We will consider his point of error under the authority of Tex.R. Civ.P. 1, which provides that the Texas Rules of Civil Procedure shall be given a liberal construction, and the rule announced in *Fambrough v. Wagley*, 140 Tex. 577, 169 S.W.2d 478 (1943).

As indicated above, special issue no. 1 inquired whether the sum of $5,000.00 that Walker agreed to pay Ross was to compensate Ross (1) for Ross' services in obtaining the Lancaster Bank loan, and/or (2) for Ross' advertising and promotional services, and/or (3) for Ross' loan on the Mudge house.

By so combining these three inquiries in special issue no. 1 and linking them with the ambiguous "and/or" construction, the court permitted the jury to base its answer on any one, all, or a combination of the three items included; without indicating to which items its answer responded.

It is unnecessary for us to speculate which items the jury's affirmative answer responded to, however, for it is our conclusion that for the reasons stated below the court's judgment may not rest upon items (2) or (3) in special issue no. 1, and that, if resting upon item (1), such answer conflicts with the jury's answer to special issue no. 2.

| | |
|---|---|
| Item (1) of— special issue no. 1. | Whether the sum of $5,000.00 that Walker agreed to pay Ross was to compensate Ross for Ross' services for obtaining the Lancaster Bank loan. |

If the jury's affirmative answer to special issue no. 1 was based upon item (1), such answer was in effect a finding that the $5,000.00 was interest, as already discussed. It is apparent from the jury's answer to special issue no. 1 and from the facts analyzed above that the $5,000.00 in question was a fee charged by Ross for obtaining the loan from the Lancaster Bank and then loaning the money to Walker. It is a charge for the use and detention of money and therefore is interest. The jury found, in answer to special issue no. 2, however, that the $5,000.00 was not interest. Our analysis of the evidence and the jury's findings together with the court's instructions and the applicable law, reveals that if the jury's answer to special issue no. 1 was based upon item (1) of the instruction, there is an irreconcilable conflict between the jury's answers to special issues nos. 1 and 2.

| | |
|---|---|
| Item (2) of— special issue no. 1. | Whether the $5,000.00 that Walker agreed to pay Ross was for Ross' advertising and promotional services. |

■ We will next examine the evidence concerning Ross' advertising and promotional services to Walker which is item (2) in special issue no. 1. Ross testified that the services he rendered were in the nature of Ross Agency's mailing letters for Walker. He testified that Ross Agency is a corporation, as is Product Promotions, and that he is an officer, employee and a shareholder of these corporations. On May 1,

1972, the Ross Agency billed Flower Mound Investment Co., Inc., in the amount of $347.40 for mailing out 965 personalized letters. This bill has not been paid. Walker testified that this bill (which was admitted in evidence) was not his bill, he was not liable for it, it was not addressed to him, and the services were instead rendered to Flower Mound Investments Co., Inc., as the bill reflects. Ross, although present in the courtroom, offered no evidence to the contrary. If a party has the means and opportunity to disprove testimony, if it is not true, and fails to do so, he is bound by such testimony. *Great American R. Ins. Co. v. San Antonio Pl. Sup. Co.,* 391 S.W.2d 41 (Tex.1965).

When confronted with this exhibit and this evidence, Ross testified that he had rendered other services, but he was unable to specify their nature, when they were performed, or the amount they were worth. Ross also admitted he had not billed anyone for them.

■ If the jury's answer to special issue no. 1 was based upon item (2) of the special issue, we hold that the record contains no evidence of probative value as to the value of the alleged advertising and promotional services performed by Ross for Walker. In this regard we also hold that there is insufficient evidence to support the jury's answer to item (2) of special issue no. 1.

Item (3) of— special issue no. 1. | Whether the $5,000.00 that Walker agreed to pay Ross was to compensate Ross for his loss on the Mudge house.

■ Item (3) in special issue no. 1 permitted the jury to determine whether all or part of the $5,000.00 was to compensate Ross for his loss on the Mudge house. (Although the issue assumes there was a loss on the Mudge house, there was no objection to it on that ground.) We have carefully examined the record and determined that the jury's verdict with regard to the alleged loss on the Mudge house transaction is not supported by the evidence. The figures before this court actually reflect a net profit for Ross, as shown below.

Ross testified that he received the following amounts of money in connection with the Mudge house transaction: (1) Walker paid him $2,500.00 to obtain his guarantee of the second lien note; (2) after he had obtained title to the house and determined his loss, Mudge paid him what they agreed was the entire amount of the loss, $7,244.59; (3) when the house was later sold to Sutton, Sutton assumed the first mortgage on the house in the amount of $43,400.00; (4) Ross accepted a second lien note from Sutton in the amount of $10,915.00; and (5) he received a cash down payment of $1,509.00.

These items alone total $65,568.59.

Ross also testified that with money borrowed from the Lewisville State Bank he paid $24,000.00 plus interest to a lumber company which was the holder of a mechanic's lien on the Mudge house. After Mudge reconveyed the house to Ross in lieu of Ross' foreclosing, Ross paid the Irving Bank $38,195.41, making a total of $62,195.41 paid out.

On the basis of the above figures ($65,568.59 received and $62,195.41 paid out), Ross made a net profit of $3,373.18 on the Mudge house transaction.

In addition, Walker paid Ross, or paid for his benefit, some of the interest on the $50,000.00 loan that Ross had obtained from the Lancaster Bank, in the amounts of $78.00 and $2,125.00. Walker also paid Ross $1,901.04 representing interest on the loan that Ross obtained from the Lewisville State Bank in the amount of $25,000.00, and $2,500.00 to reduce the principal, and $843.75 as interest on the balance of the above-described loan from Lewisville State Bank to Ross.

We hold that if the jury's answer to special issue no. 1 was based upon item (3) thereof there is no evidence and insufficient evidence to support the jury's answer thereto.

## CONCLUSION

In summary, we hold with respect to special issue no. 1 that the jury's answer, if resting upon item (1) thereof, is under the law and the evidence, a finding that the

$5,000.00 charge was interest; that such answer, if resting upon item (1), is in conflict with the jury's answer to special issue no. 2; and that there is no evidence and insufficient evidence to support the jury's answer, if based upon items (2) and (3).

Although the note reflects that the loan was for a term of two days less than six months, we will treat it as a full six months term to facilitate discussion. The $5,000.00 charge for this period is thus the equivalent of an annual charge of at least 20% interest. In addition, Walker contracted with Ross to pay the Lancaster Bank the 8½% interest charged Ross by the Lancaster Bank on the $50,000.00 loan. This results in a total charge to Walker of at least 28½% interest on the $50,000.00 loan.

Under the record the charge for the loan is clearly usurious.

The contradictory jury findings in this case do not support the trial court's judgment for Ross. Nor do they provide a proper basis for rendition of judgment for Walker. *King v. Hill*, 141 Tex. 294, 172 S.W.2d 298 (1943); *Brewster v. City of Forney*, 223 S.W. 175 (Tex.Com.App.1920).

It is also our opinion that the case was not fully developed. In the interest of justice we refrain from rendering judgment for Walker. *London Terrace v. McAlister*, 142 Tex. 608, 180 S.W.2d 619 (1944); Tex.R. Civ.P. 434; Calvert, "...  *In the Interest of Justice*"; 4 St. Mary's L.J. 291 (1972).

An examination of the record discloses the pleadings are global, vague and indefinite and gave little guide to the trial court in ruling upon the admissibility of evidence. There were no special exceptions filed; Ross reduced his accounting to an exhibit which was admitted into evidence but does not appear in the record; Walker placed his accounting on the blackboard which is not in the record, and the parties were searching for pertinent records during overnight recesses during the trial. The pleadings and evidence presented a confusing picture to the jury and caused problems for the court in trying the case. In order to avoid unnecessary delay in these proceedings, we refrain from ordering Walker's counsel to rebrief the case, under the authority of Tex.R.Civ.P. 422.

Normally in a case of this kind a court would order a proceeding under Tex.R. Civ.P. 166, Pre-Trial Procedure; Formulating Issues. At this pre-trial stage, the court can require the parties to plead specifically; to properly make their requests for issues and instructions; and to submit all proposed exhibits for examination; identification and marking by the court reporter. The court may also consider other matters to facilitate the trial and narrow the issues and may make any other determination that may either shorten or dispose of the case.

Reversed and remanded.