## PEARCY MARINE, INC.

v.

## ACADIAN OFFSHORE SERVICES, INC.

### Civ. A. No. G-93-123.

United States District Court,
S.D. Texas,
Galveston Division.

Sept. 16, 1993.

Robert A. Sherman, Morris & Campbell, Houston, TX, for plaintiff.

Morton Lee Susman, Weil, Gotshal & Manges, Houston, for defendant.

### ORDER OF PARTIAL DISMISSAL AND ADMINISTRATIVE STAY

KENT, District Judge.

Before the Court is Defendant's Motion for Summary Judgment on Plaintiff's claims for sums owing on a note and for damages under Texas' usury statutes. For the reasons stated below, the Court is of the opinion that the Motion should be GRANTED as to Plaintiff's usury claim.

Also before the Court is Defendant's oral motion to stay these proceedings on the remaining matters before this Court pending the completion of concurrent litigation over these same issues in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. This Court is of the opinion that any further proceedings in this case should be STAYED pending the resolution of these issues in Bankruptcy Court. Furthermore, this case will be ADMINISTRATIVELY CLOSED pending a showing by either party that further proceedings in this Court are necessary.

### Background

On February 26, 1990, Defendant Acadian Offshore Services, Inc. ("Acadian") purchased the M/V Amelia Pearcy from Plaintiff Pearcy Marine, Inc. ("Pearcy"). As part of the purchase price, Acadian executed a $450,000 promissory note to Pearcy. Acadian then chartered this vessel back to Pearcy.

Acadian owed no payments on this note until February 22, 1992, when the full principal and 8.8% per annum interest became due. Nonetheless, in the Spring of 1991, Pearcy asked Acadian to make an early payment on the note because Pearcy needed cash. Acadian agreed, and under the terms of a letter agreement dated April 5, 1991, signed by both parties, Acadian agreed to advance $75,000 to Pearcy against the promissory note. In exchange for this advance payment, Pearcy agreed to excuse any further interest on the note from April 1, 1991, through the due date, February 22, 1992.

The amount of interest actually saved by Acadian under this agreement cannot be determined without resolving the underlying dispute between the parties over the total amount owing on the note. Acadian claims various offsets against the note, in addition to the $75,000 advance payment, for money Pearcy owed Acadian on both related and unrelated transactions. Because these charges allegedly accrued before and soon after the April 5 agreement, presumably Acadian believes that the forgiveness of future interest resulted in little if any savings. Pearcy, on the other hand, disputes the validity of some of these offsets (and the enforceability of all). Hence Pearcy's estimates of the foregone interest range from roughly $17,000 to over $20,000.

In addition to the terms described above, Pearcy agreed in the April 5 letter that "it will promptly and fairly resolve all off charter outstandings for the M/V's Subsea and Amelia Pearcy," either by immediate payment or by offset against the note. The letter then specifies these outstanding charges as the repair and recertification costs for these two vessels, which had been under charter to Pearcy. Acadian now claims these costs totalled roughly $400,000.

## Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A fact is material if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists if there is a genuine issue for trial that must be decided by the trier of fact. In other words, summary judgment should not be granted if the evidence indicates that a reasonable fact-finder could find in favor of the nonmoving party. *Id. See also Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In ruling on a Motion for Summary Judgment, the Court must accept the evidence of the nonmoving party and draw all justifiable inferences in his favor. Credibility determinations, the weighing of the evidence, and the drawing of reasonable inferences are left to the trier of fact. *Anderson v. Liberty Lobby, supra*, 477 U.S. at 255, 106 S.Ct. at 2513.

Under Fed.R.Civ.P. 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once this burden is met, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita, supra*, 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Leonard v. Dixie Well Serv. & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir.1987).

Where the moving party has met it Rule 56(c) burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no *genuine issue for trial.*" *Matsu-*

*shita, supra*, 475 U.S. at 586–87, 106 S.Ct. at 1356 (quoting Fed.R.Civ.P. 56(e)) (emphasis original).

\* \* \* \* \* \*

█ As a preliminary matter, it should be noted that Acadian's Motion for Summary Judgment is wholly unsupported by competent evidence. Although Acadian submitted an inch-thick stack of documents attached to its motion, these are not authenticated by affidavit or otherwise. It is a basic principle of federal motion practice that unsworn documents are not appropriate for consideration on a motion for summary judgment. *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir.1987). Therefore Acadian's documents represent nothing more than so much litter in the Court's files.

This error is not fatal to Acadian's motion, however, as far as it pertains to the usury issue. Standing alone, the motion adequately meets Acadian's burden of informing the Court of the basis of its motion; i.e., that the transaction described in Pearcy's pleadings is not usurious as a matter of law. This shifts the burden to Pearcy of coming forward with some evidence which could convince a rational trier of fact that Acadian had committed usury. Pearcy has indeed presented this Court with some properly authenticated documents describing the transaction, and the Court bases its ruling only on a consideration of those documents and the pleadings.

## Pearcy's Usury Claim

Acadian apparently does not contest that Texas law governs Pearcy's usury claims. This law provides stiff penalties against a party charging interest in excess of the statutory maximum rate, interest being defined as compensation for the use, forbearance, or detention of money. Tex.Rev.Civ.Stat. art. 5069–1.01 *et seq.* (Vernon 1987). Pearcy claims that the $75,000 advance payment by Acadian should be treated as a usurious loan under these statutes because Acadian gave Pearcy the "use" of this money for the eleven months prior to the note's due date in exchange for Pearcy's agreement to pay charges of over $400,000. While the creativity of Pearcy's counsel in the invention of this

argument is commendable, sheer novelty does not justify a trial on this issue. The claim comports neither with the reality of this transaction nor the purpose and meaning of the Texas usury laws.

■■■ The Texas usury statutes are penal in nature and are to be strictly construed. *Texas Commerce Bank–Arlington v. Goldring*, 665 S.W.2d 103, 104 (Tex.1984). The courts initially presume that all contracts are non-usurious, and when the terms of a contract are susceptible to more than one reasonable construction, the court will adopt the construction which comports with legality. *Smart v. Tower Land & Inv. Co.*, 597 S.W.2d 333, 340–41 (Tex.1980). Therefore, when a transaction appears to be lawful on its face, the party claiming usury carries the burden of proof on that issue. *Najarro v. SASI Int'l, Ltd.*, 904 F.2d 1002, 1005–06 (5th Cir. 1990), *cert. denied*, 498 U.S. 1048, 111 S.Ct. 755, 112 L.Ed.2d 775 (1991).

On its face, the April 5 letter agreement does not appear to be a contract for a loan with usurious interest. It appears to be an agreement by Acadian to make an early payment on its loan from Pearcy, in exchange for reduced interest on that loan and Pearcy's agreement to promptly pay its debts to Acadian. Hence Pearcy bears the burden on this claim of proving that this apparent advance payment was actually a loan on which usurious interest was charged. Because Pearcy has failed to come forward with *any* evidence which would support such a construction, Acadian is entitled to summary judgment on this issue.

■■■ First, it is fundamental that usury can arise only from a loan or forbearance of money. *Crow v. Home Sav. Ass'n of Dallas County*, 522 S.W.2d 457 (Tex.1975). In his briefs and at oral argument, counsel for Pearcy attempted to distinguish the term "loan" (which does not appear in the statutes) from the term "use of money" (which does), arguing that although the $75,000 prepayment does not appear to be a loan, the usury statutes apply because Acadian gave Pearcy the "use" of that money for eleven months before it was due. This argument is pure sophistry. The law of Texas has long been that the statutory term "use" refers to the

making of a loan. *See Parks v. Lubbock*, 92 Tex. 635, 51 S.W. 322, 323 (1899); *Tygrett v. University Gardens Home. Ass'n*, 687 S.W.2d 481, 483 (Tex.App.—Dallas 1985, writ ref'd n.r.e.) (defining "use," "forbearance" and "detention").

Hence before the issue of usurious interest can even be reached, Pearcy is required to prove that it received a loan from Acadian, the principal of which Pearcy had an absolute obligation to repay. *Najarro*, 904 F.2d at 1005; *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex.1982). Pearcy has presented no evidence from which such a conclusion could reasonably be drawn. The early payment of a debt is not a loan, even though, as Pearcy points out, the debtor had no obligation to make such a payment. Once Acadian made the advance payment, Pearcy likewise assumed no obligation to ever re-pay Acadian at any time in the future. Rather, Pearcy was simply required to presently reduce the amount of Acadian's past debt. Acadian no more became Pearcy's creditor than a homeowner becomes the creditor of his bank when he pays off his mortgage early. Because Acadian made no loan, no usury could have been committed.

In fact, Pearcy concedes in its original brief in opposition to this motion that a mere advance payment of an unmatured debt is not a credit transaction. Rather, Pearcy argues: "The problem here is the huge consideration Acadian exacted from Pearcy in return for the $75,000.00 payment. This turns the advance payment into a credit transaction." Plaintiff's brief at 12–13. This "argument" is devoid of logic. The consideration paid for the transaction bears no relevance whatsoever to the transaction's characterization; rather, it goes only to whether the transaction was legal *if* it was a loan. Given Plaintiff's concession that a debt pre-payment is not ordinarily a "loan" to the lender, no question of usury can arise in the first place.

■■■ The Court nonetheless understands the thrust of Pearcy's efforts to get beyond these labels. Basically, Pearcy is trying to argue that in the April 5 letter Acadian might as well have said "we agree to loan

Pearcy $75,000, due on the same day next year as our outstanding note, in exchange for $420,000."[1] Thus phrased, the transaction of course appears quite usurious. And the Court is mindful that, in determining whether a charge is solely for the use of money, it must look behind the parties' labels to examine the substance of the transaction, rather than merely accepting the form it has taken. *Gonzales County Sav. & Loan Ass'n v. Freeman*, 534 S.W.2d 903, 906 (Tex.1976). In this case, however, Pearcy has presented no evidence to indicate that this transaction was not exactly what the parties purported it to be; that is, the mere pre-payment of an unripe debt.

 The Court also recognizes that this decision allows great leeway to debtors in advancing cash to their creditors. Because of the pre-existing debt, the borrower will be in a position to charge greater compensation for the advance than it would be lawfully allowed to charge for a loan. This is, however, as it should be. The usury statutes are not designed to thwart the ability of debtors to negotiate the early discharge of their debts; they are designed to curb abusive credit practices by limiting interest rates to those which the legislature considers fair. *George A. Fuller Co. v. Carpet Serv., Inc.*, 823 S.W.2d 603, 604 (Tex.1992).

For example, consider a note held by a bank, executed by a party whose solvency is now questionable. The note is due a year from today. Wishing to remove the risk of complete default, the bank offers the note for sale at a 50% discount. By Pearcy's reckoning, if the debtor buys back his own note at this discounted rate, he has committed usury. He has advanced the bank half his debt in exchange for the cancellation of the other half which, by this view, is equivalent to making a one-year loan at 100% interest. Texas law, however, neither requires nor permits such a contortion of the characterization of this transaction.

Rather, any advantages Acadian acquired for its advance payment should be described as legitimate charges for Acadian's relinquishment of its right to decline to make an early payment, not as interest. Although the Texas courts have not directly addressed this question, the complementary proposition—that a *lender's* charge of pre-payment penalties is not interest—appears well settled. Such a charge is "not for the use of money, but for the privilege of repaying the loan before maturity." *Boyd v. Life Ins. Co. of the Southwest*, 546 S.W.2d 132, 133 (Tex.Civ. App.—Houston [14th Dist.] 1977, writ ref'd). It seems only fair and logical that, should the tables be reversed, the outcome would remain the same. Hence, should a borrower have the better bargaining position and charge the lender a pre-payment penalty, this penalty is likewise not a charge for the use of money, but rather for the lender's privilege of being repaid early.

\* \* \* \* \* \*

For the sake of argument and completeness, the Court notes that, even were the $75,000 advanced under the April 5 letter agreement treated as a loan, Pearcy has come forward with no evidence which would support a finding that Acadian charged usurious interest for this loan. On the contrary, neither of the charges to which Pearcy points as usurious can properly be classified as interest charged.

 Pearcy first claims that the forgiven interest on Acadian's note is interest on the advance payment. This is not a reasonable characterization. Rather, it is clear that this interest reduction should be described as a renegotiation of the terms of the original loan. Otherwise, were Pearcy's claim colorable, almost every borrower who ever renegotiated a lower interest rate on his debt for little or no consideration would be guilty of usury.

The bulk of Pearcy's usury claim, however, arises from the mention in the April 5 letter agreement of Acadian's claims against Pearcy for repair and recertification costs on two vessels which Pearcy had chartered from Acadian and an affiliated company. The April 5 letter estimated these costs at be-

---

1. It is worth note in passing that the amount of this claim itself begs credibility. The Court doubts whether the sleaziest loan shark could extract 611% annual interest from the most desperate gambler, yet this is precisely what Pearcy claims it agreed to.

tween $80,000 and $135,000; Acadian now calculates these charges to be roughly $400,000. Acadian claims these sums are due under the terms of the respective charter agreements, while Pearcy denies this. Pearcy argues that, since it did not owe Acadian for these charges prior to the April 5 agreement, and Acadian required Pearcy to assume liability for these charges as a condition of advancing the $75,000, these charges constitute interest on the $75,000 "loan."

The Court rejects this argument on two grounds. First, even if Pearcy weren't previously obligated to pay these costs, the April 5 letter does not clearly create such an obligation. Rather, the agreement states that Pearcy will "promptly and fairly resolve all off charter outstandings." This language is not certain enough to constitute a "charge" for purposes of the usury statutes. It is not even certain how much Pearcy agreed to pay to "resolve" these charges; for all we know, Pearcy considered a "fair resolution" of the claims to be a refusal to pay them. At any rate, given the presumption that contracts are not usurious if they can be so fairly construed, the letter represents at most a notice to Pearcy of Acadian's position on this issue. If Pearcy did not in fact owe these charges, the only "fair resolution" would be non-payment, and hence no charge to consider as interest.

Secondly, if Pearcy *did* owe these charges to Acadian or its affiliates, then conditioning the "loan" on Pearcy's agreement to pay these charges does not amount to charging interest. "There is no usury when a borrower agrees to pay his undisputed prior obligations to the lender, as part of the consideration for a new loan...." *In re Casbeer*, 793 F.2d 1436, 1446 (5th Cir.1986) (citing *Alamo Lumber Co. v. Gold*, 661 S.W.2d 926, 928 (Tex.1984)). The problem in applying the rule to the present facts is, of course, that Pearcy's prior obligations appear to be hotly disputed—a circumstance Texas courts have not previously addressed. However, this distinction is immaterial on these facts. Pearcy has presented no evidence that it disputed its liability for these charges at or before the time the April 5 agreement was executed. If a contract is usurious, it must

be so at the time of agreement. Absent evidence that these charges were a sham designed to conceal usurious interest, Pearcy cannot transform this apparently legal transaction into a usurious one by later disputing the validity of its past debt.

Furthermore, the Court is of the opinion that the Texas courts, faced with these facts, would not strictly construe the term "undisputed" in the above-quoted rule. The penal nature of the usury statutes would be overly burdensome if, with regard to a borrower's disputed debts to a lender, usury arose simply from the lender's requirement that its borrower agree to pay such prior debts which the lender, in good faith, believes the borrower to be liable for. If the obligation is disputed, such an agreement is in the nature of a settlement of that dispute. The courts should not be called upon at a later date to estimate the actual value of that settlement in order to determine whether that value constitutes usurious interest on the loan. Inclusion of a speculative value as interest on a debtor's separate obligation would go against the parties' expectations and greatly increase uncertainty in lending transactions. *See Moore v. Liddell, Sapp, Zivley, Hill & Laboon*, 850 S.W.2d 291, 294 (Tex.App.—Austin 1993, writ denied) (holding that debtor's guarantee of another's debts as condition of loan to debtor was not additional interest on loan for purposes of usury calculations, as a guarantee is contingent in nature).

\* \* \* \* \* \*

All of this is not to say, however, that this Court could not envision a transaction appearing much like this one which, in fact, was simply a subterfuge designed to bypass the usury laws. For example, a creative lender bent on charging usurious interest might give its borrower a promissory note unsupported by consideration, and then "pre-pay" the note in exchange for the borrower's agreement to pay, at some time in the future, phantom outstanding debts to the lender which have no legitimate basis. This is not the case here, however. Pearcy has neither pled nor presented evidence that the original $450,000 note was not supported by consideration. Indeed, such proof would defeat its claim for collection of the note. Nor does the

April 5 letter agreement contemplate that Acadian's claims for repair and recertification costs will be paid at some set time in the future, in a manner which might prove a disguise for the repayment of principal and usurious interest on a well-concealed loan transaction. Rather, the letter simply required Pearcy to agree that it would "promptly and fairly resolve" these claims. On the evidence presented by Pearcy, a finding that this transaction was in fact such a sham is not a reasonable possibility.

### Proceedings in Bankruptcy Court

■ The remaining issues in this case involve Acadian's liability to Pearcy on the $450,000 note and Pearcy's liability to Acadian for several hundred thousand dollars in charter invoices. At the hearing on Acadian's summary judgment motion on September 1, 1993, both parties represented to this Court that these issues are currently being litigated in the United States Bankruptcy Court for the Southern District of Texas, Houston Division, where Pearcy has sought protection under the bankruptcy laws. The parties further represented that that Court has concurrent jurisdiction over these issues with this Court.

The United States Bankruptcy Courts were established as the most efficient means of administering the often complex proceedings governed by the Bankruptcy Code. They are courts of highly specialized knowledge, experience and expertise in this area. Based on the representations of the parties, this Court is of the opinion that the Bankruptcy Court overseeing Pearcy's reorganization is the most appropriate forum for decision on the remainder of the disputes in this case, and that therefore proceedings in this Court should be STAYED. This is especially true given Pearcy's allegations that the orders of the Bankruptcy Court affirmatively bar Acadian's defenses. Clearly that Court is best situated to determine the effect of its own orders on matters pending before it. This Court has the utmost confidence in the abilities of the Houston Bankruptcy Courts to adjudicate a fair resolution of these disputes; moreover, further proceedings in this Court during the pendency of the Bankrupt-

cy action would result in the unnecessary dissipation of scarce judicial resources.

\* \* \* \* \* \*

For the reasons stated above, Defendant's Motion for Summary Judgment is GRANTED in part, and Plaintiff's claim for usury is DISMISSED WITH PREJUDICE, with each party to bear its own taxable costs incurred herein to date, in regard thereto. It is further ORDERED that the parties file no further pleadings on this issue in this Court, including motions to reconsider and the like. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

It is further ORDERED that the remaining proceedings in this Court be ADMINISTRATIVELY STAYED pending resolution of the remaining issues in this case in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. As necessary, in due course, this case may be re-opened on motion of either party upon a sufficient showing that the Bankruptcy Court is unable to resolve all remaining issues in this case.

IT IS SO ORDERED.