**C. T. STEDMAN, Appellant,**

v.

**GEORGETOWN SAVINGS AND LOAN ASSOCIATION, Appellee.**

No. 18033.

Court of Civil Appeals of Texas, Fort Worth.

Dec. 21, 1978.

Rehearing Denied Jan. 18, 1979.

McDonald, Sanders, Ginsburg, Phillips, Maddox & Newkirk and Sam J. Day and Carter L. Ferguson, Fort Worth, for appellant.

Clark, Thomas, Winters & Shapiro and Roy C. Snodgrass III, Austin, for appellee.

OPINION

HUGHES, Justice.

C. T. Stedman, plaintiff, sued Georgetown Savings and Loan Association, defendant, for usury, asking for penalties under Tex.Rev.Civ.Stat.Ann. art. 5069–1.06 (1971). Trial to the court resulted in judgment for defendant. "Findings of Fact and Conclusions of Law" were requested and filed, to which plaintiff objected. Additional and amended "Findings of Fact and Conclusions of Law" were requested by plaintiff and denied by the trial court. Plaintiff perfected appeal.

We affirm.

No material facts are in issue, but the parties disagree emphatically as to their legal import. It appears that plaintiff asked defendant for a $65,000.00 loan to build a Dairy Queen. Defendant denied the application stating that it preferred to make home loans rather than high risk restaurant loans. However, defendant later reconsidered and agreed to lend plaintiff $60,000.00 payable over a period of 15 years at 10% interest per annum. The commitment was offered to plaintiff and he accepted.

The commitment, § 2, provided "–0–" loan fee to be paid in advance but stated in

§ 8 that defendant would "set aside and escrow the funds for the project and interest shall begin to accrue from that date." No percentage of interest was stated in § 8, but defendant charged and plaintiff paid 10% on $60,000.00 from 6–30–75 to the end of January, 1976. On February 2, 1976, the permanent loan was closed when plaintiff executed a note to defendant providing for 10% per annum interest.

Trial court's findings of fact pertinent and in dispute are:

"(5) Upon the acceptance of the commitment by the Plaintiff, the Defendant set aside and reserved on its books the sum of $60,000.00.

"(7) Pursuant to the commitment, Plaintiff paid a fee at the rate of ten percent per annum from July 7, 1975 through the month of January, 1976, being a total of $2,883.31. The fee was paid by Plaintiff and accepted by Defendant in return for Defendant's issuing the commitment to make a loan in the future.

"(8) The commitment entitled the Plaintiff, at his sole option, to obtain the loan described therein from Defendant and the consideration for the option was payable whether or not the permanent loan was actually made.

"(9) The commitment did not bind Plaintiff to borrow the money from Defendant and he was free to try to arrange permanent financing on terms more favorable to him from other lending institutions.

"(12) At no point in time has Plaintiff paid or Defendant received any sums in excess of ten percent per annum computed on $60,000.00.

"(16) There existed two separate transactions under the facts of this case, a commitment and a subsequent loan, and the Defendant charged a separate fee as compensation for each transaction.

"(17) All the payments made under the commitment were made prior to the formal execution and funding of the permanent loan.

"(18) The ten percent per annum fee charged for the commitment was a yardstick used to express the changing price at which the Plaintiff's option to enter into a loan in the future could be exercised."

Although plaintiff has assigned twenty points of error in his brief, we are really concerned with one primary question: Was the money paid before the note was executed interest?

We hold the pre-note payments to be consideration from plaintiff to defendant for an eight month unilateral option, giving plaintiff the option for a permanent loan from defendant, if plaintiff so elected.

If, at the end of the eight months, plaintiff obtained his loan from another source and elected to not exercise his option with defendant, what would the 10% "interest" payments be? We hold them to be what trial court found them to be—consideration for an option. The option was the first of two separate transactions (a commitment and a loan). They were obviously separate, for the commitment could have been completed and terminated without implementation of the loan. The money paid up to that time which was denominated as "interest", would have no principal on which to attach. Its purpose was served: it had bought an option for eight months, using the 10% interest provision in the future loan as a "yardstick". "A fee which commits the lender to make a loan at some future date does not fall within this definition" (usury). "Instead, such a fee merely purchases an option which permits the borrower to enter into a loan in the future." *Gonzales County Sav. & Loan Assoc. v. Freeman,* 534 S.W.2d 903, 906 (Tex.1976). The same case also pointed out that such a provision, as here entitled the borrower to a separate and additional consideration apart from lending money. The Texas Supreme Court also enunciated the rule that courts should look beyond the form of the transaction to its substance to determine if usury exists. "Labels put on particular charges are not controlling." We hold the "interest" label in this case not controlling for reasons before stated.

A contract, doubtful in terms of construction or susceptible of more than one reasonable meaning, will be construed by a court in the manner which conforms with legality. *Walker v. Temple Trust Co.,* 124 Tex. 575, 80 S.W.2d 935 (1935). This is done particularly in penal type statutes, such as those dealing with usury. *Pinemont Bank v. DuCroz,* 528 S.W.2d 877 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n. r. e.).

Plaintiff has stressed the fact that defendant did not "escrow" $60,000.00 as provided in the commitment. No escrow was proven, as a matter of fact, and defendant's agent testified, in effect, that none was made. However, we hold this to be immaterial in that defendant was bound by the commitment to be ready to have the $60,000.00 available at whatever time plaintiff might demand it during the eight month option period.

In view of our foregoing holdings, we overrule points of error 1 through 20 and affirm the trial court.