TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00532-CV






Robert Lindgren and Lauren Lindgren, Appellants



v.



Richard Rogers and Damifino, Inc., Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT


NO. 97-03062, HONORABLE PAUL R. DAVIS, JR., JUDGE PRESIDING







 Robert Lindgren and Lauren Lindgren bring this restricted appeal complaining of
the post-answer default judgment granted in favor of Richard Rogers and Damifino, Inc. The
court awarded $75,000 in actual damages and $300,000 in exemplary damages against the
Lindgrens and Franklyn Barker, who is not part of this appeal. The Lindgrens complain that the
evidence does not support the judgment rendered. We will affirm the judgment in part and reverse
and render in part.

 Because any error in a restricted appeal must be apparent from the face of the
record, we will confine our discussion of the facts to evidence presented at trial. See Tex. R.
App. P. 30; see also Norman Communications v. Texas Eastman Co., 955 S.W.2d 269, 270 (Tex.
1997). The evidence included several documents and Rogers's testimony. Rogers and Franklyn
Barker (1) formed Damifino in June 1996 to finance, sell, and service used cars. Originally Franklyn
owned ninety percent of Damifino's stock and Rogers owned ten percent. Franklyn purported in
November 1996 to convey his shares to Rogers for $2,000. Rogers testified that he never paid
the $2,000 because Barker was vacillating between taking the money and taking a car from
Damifino instead. In February 1997, Franklyn agreed to accept a car as his final compensation
from Damifino. The title certificate to a 1991 Chevrolet Lumina shows that it was conveyed to
Franklyn. The stock ledger in evidence, however, does not reflect that any stock transfer
occurred.

 Franklyn, as secretary of the corporation, called an emergency stockholders'
meeting at the car lot on March 6, 1997. Rogers testified that at the time, the corporation had at
least $25,000 in cash in the bank and owned tools, computers, other office equipment, and several
cars which brought the combined assets to more than $75,000. He said he thought the stock
transfer would formally occur at this meeting. Instead, the Barkers and the Lindgrens were
elected officers of Damifino, shutting Rogers out--literally. Rogers testified that the new officers
told him he was no longer a shareholder and told him to leave the property or he would be forcibly
removed, at gunpoint if necessary. Rogers testified that the Barkers and Lindgrens disposed of
Damifino's assets and spent its money; he did not give a time frame for this activity. He said that
Franklyn fled to Florida and Shannon filed Chapter 7 bankruptcy. Rogers testified that the events
destroyed him financially, forced him to sell his home, and caused his wife severe depression. 

 Rogers sued the Lindgrens and Barkers. His claims included conversion, fraud,
assault and battery, and civil conspiracy. On March 13, 1997, he obtained a temporary order
restraining them from disposing of Damifino's assets; that restraint continued under an agreed
extension of the TRO, then by an agreed temporary injunction and order that permitted the sale
of Damifino's vehicles on condition that the proceeds be used to pay corporate debts. Rogers and
Damifino sought contempt sanctions against the Barkers and Lindgrens for failure to comply with
this term of the agreed order. In June, the Lindgrens and Barkers responded to some
interrogatories and requests for production. The clerk's record shows that, in June and July,
Rogers twice sought and obtained sanctions against the Barkers for noncompliance with discovery
requests; the Lindgrens were not similarly sanctioned. The Barkers' attorney, who withdrew from
his initial representation of the Lindgrens because of conflicts with the Barkers, withdrew from
representing the Barkers because Rogers named him as a witness. Rogers nonsuited Shannon on
April 27, 1998. On the same date, he sent requests for admission to the Lindgrens by certified
mail; they did not respond to his requests. (2) On June 22, 1998, he proceeded to trial against the
Lindgrens and Franklyn. Neither appeared at trial.

 The court rendered judgment for Rogers and Damifino. The judgment contains
findings that track the deemed admissions. The trial court awarded $75,000 in actual damages and
$300,000 in exemplary damages. The Lindgrens did not file any post-judgment motions until their
notice of restricted appeal, filed three months after the judgment was signed.

 Restricted appeals, which replaced writ of error appeals, are available to parties
who neither participated in the hearing that resulted in the judgment nor timely filed a post-judgment motion, request for findings of fact and conclusions of law, or notice of appeal. Tex.
R. App. P. 30. The error complained of must be apparent from the face of the record. Norman
Communications, 955 S.W.2d at 270; see also Attorney Gen. v. Orr, 989 S.W.2d 464, 466 n.1
(Tex. App.--Austin 1999, no pet.) ("face of record" requirement applies to restricted appeals). 
Whether sufficient evidence supports the judgment is an appropriate inquiry on restricted appeal. 
See Comstock Silversmiths, Inc. v. Carey, 894 S.W.2d 56, 57 (Tex. App.--San Antonio 1995, no
writ) (discussing writ of error appeal).

 The Lindgrens raise eight issues on appeal. They ask whether evidence proves they
conspired with Franklyn to oust Rogers from his ownership in and control of Damifino "when
they were not officers, directors, or stockholders." (3) They also question whether evidence showed
that they were liable in any capacity to Rogers, that they proximately caused any of Rogers's
damages, that they participated in the removal of funds from Damifino accounts, or that they
received monetary benefits from the sale of Damifino assets. Finally, they question whether
evidence showed Rogers owned ninety percent of Damifino stock or could recover exemplary
damages from the Lindgrens.

 Of the Lindgrens' eight issues on appeal, seven directly or indirectly challenge the
sufficiency of the evidence to support the judgment. We will construe these as challenges to the
legal and factual sufficiency of the evidence. In evaluating a no-evidence point of error, we review
the evidence in the light most favorable to the judgment, considering only evidence and inferences
that support the findings, and rejecting contrary evidence and inferences. Stedman v. Georgetown
Sav. & Loan Ass'n, 595 S.W.2d 486, 488 (Tex. 1979). We must uphold the jury's finding if it is
supported by more than a scintilla of evidence. Id. In reviewing a factual sufficiency point, we
review all the evidence and can reverse only if we determine that the evidence supporting the jury's
verdict is so weak as to make the verdict clearly wrong and the judgment unjust. Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986).

 The appellees rely heavily on deemed admissions. The now-repealed rule governing
admissions provided the matter requested to be admitted


 is admitted without necessity of a court order unless, within thirty days after
service of the request . . . the party to whom the request is directed serves upon the
party requesting the admission a written answer or objection addressed to the
matter . . . . Any matter deemed admitted under this rule is conclusively
established as to the party making the admission unless the court on motion permits
withdrawal or amendment of the admission.


Former Tex. R. Civ. P. 169. (4) The Lindgrens never responded to the following requests for 
admissions:


  1. You conspired with Franklyn Barker to oust Richard C. Rogers from his
ownership in and control of Damifino, Inc.


  2. After the ouster of Richard C. Rogers from the ownership in and control of
Damifino, Inc., you participated in the sale of assets owned by Damifino,
Inc.


  3. You personally received monetary benefits from the sale of the assets owned
by Damifino, Inc.


  4. At the time you conspired with Franklyn Barker to oust Richard C. Rogers
from his ownership and control of Damifino, Inc., you were aware that
Richard C. Rogers owned ninety percent (90%) of the stock in Damifino, Inc.


  5. On February 27, 1997, Richard C. Rogers owned ninety percent (90%) of the
stock in Damifino, Inc.


  6. Subsequent to the ouster of Richard C. Rogers from his ownership and
control of Damifino, Inc., you acted as a director of Damifino, Inc.


  7. You participated in the removal of funds from the corporate bank account of
Damifino, Inc. subsequent to the ouster of Richard C. Rogers from his
ownership in and control of the Damifino, Inc.


  8. Your conduct was a proximate cause of actual damages to Richard C. Rogers
in an amount of $75,000.00.


  9. You are indebted to Richard C. Rogers in an amount of $75,000.


10. There are no facts upon which you rely upon for a defense in this lawsuit.


11. A reasonable and necessary attorney's fee for the services of Plaintiffs'
attorneys in this case would be the sum of $25,000.


The record contains no motion to withdraw or amend the admissions. The matters are admitted.

 The deemed admissions resolve six of the Lindgrens' issues on appeal. In admission
two, the Lindgrens admit they conspired with Franklyn to oust Rogers from ownership and control
of Damifino. This admission renders the existence or duration of their officer status irrelevant
because they could conspire to oust Rogers from ownership and control without being officers. 
In admissions three, seven, and eight, the Lindgrens admit they removed money from Damifino
accounts, sold corporate assets, and thereby proximately caused Rogers $75,000 in damages. The
Lindgrens admitted in admission nine that they owed Rogers $75,000. Collectively, these
admissions prove the Lindgrens' liability to Rogers. Concordantly, these admissions also either
answer or render irrelevant the issue of whether the Lindgrens personally received money from
the sale of Damifino assets; the Lindgrens admit they owe Rogers $75,000 and could be liable for
conspiring to deprive him of those funds even if they did not receive those proceeds. Contrary
to their argument that no evidence shows that Rogers owned ninety percent of Damifino, they
admitted he did in admission five. This admission is not overcome by Rogers's testimony that the
Barkers and Lindgrens told him at the March meeting that he owned no stock; their assertion that
he owned nothing is not proof that he actually owned nothing and does not outweigh their deemed
admission regarding his ownership. Given the evidence that Rogers owned some if not all of
Damifino, he was entitled to recover if deprived of the value of that ownership interest; the dispute
over the percentage of that interest is irrelevant because of the admission that the Lindgrens
proximately caused Rogers $75,000 in damages. (5) The deemed admissions combine to substantiate
the assessment of actual damages against the Lindgrens, thereby resolving issues two through
seven against the Lindgrens.

 Further, there is no evidence of perjury by Rogers in the trial record on appeal. 
The Lindgrens point to discrepancies between his trial testimony and his deposition testimony. 
The deposition testimony, however, is not in the record on appeal and thus cannot show perjury
apparent from the face of the record. None of the other asserted inconsistencies in his testimony
shows perjury requiring reversal. We resolve issue one against the Lindgrens.

 Finally, the Lindgrens question whether Rogers should recover exemplary damages
from them. The evidence against the Lindgrens is that they were officers, they conspired to oust
Rogers, and they helped strip the company of its assets. These misdeeds are compensated through
the actual damage award. Punitive damages are available only in exceptional cases. 
Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 16-17 (Tex.1994). They are levied only to
punish defendants for "outrageous, malicious, or otherwise morally culpable conduct." Id. at 16. 
"Every tort involves conduct that the law considers wrong, but punitive damages are proper only
in the most exceptional cases." Id. at 18. The trial court found the Lindgrens and Franklyn acted
with malice. The legislature has defined "malice" in this context to mean:


(A) a specific intent by the defendant to cause substantial injury to the claimant; 
or


(B) an act or omission:


  (i) which when viewed objectively from the standpoint of the actor at the
time of its occurrence involves an extreme degree of risk, considering
the probability and magnitude of the potential harm to others; and


 (ii) of which the actor has actual, subjective awareness of the risk involved,
but nevertheless proceeds with conscious indifference to the rights,
safety, or welfare of others. 



Tex. Civ. Prac. & Rem. Code Ann. § 41.001(7) (West 1997). When determining whether to
award punitive damages, the fact finder must consider the nature of the wrong, the character of
the conduct, the degree of culpability, the situation and sensibilities of the parties, the
offensiveness of the conduct to a public sense of justice and propriety, and the size of an award
needed to deter similar future conduct. See Alamo Nat'l Bank v. Kraus, 616 S.W.2d 908, 910
(Tex. 1981). The trial record shows that the Lindgrens conspired with the Barkers to deprive
Damifino of $75,000 in cash and assets knowing that Rogers thought he owned the whole
company, and owned at least ten percent of it. Rogers said their actions destroyed him financially
and forced him to sell his house. (6)

 We conclude that no evidence showed that the Lindgrens' conduct was exceptional,
malicious, or outrageous enough to support the award punitive damages. Though Rogers testified
that the Lindgrens knew "that Frank Barker had transferred his ownership interest in the
company" to Rogers, there is no showing of ill will or spite by the Lindgrens toward Rogers or
of a specific intent by the Lindgrens to cause Rogers substantial injury. See, e.g., Oni, Inc. v.
Swift, 990 S.W.2d 500, 503 (Tex. App.--Austin 1999, no pet.). Though the Lindgrens were
Damifino officers, there is no evidence of the degree of their involvement in planning the
conspiracy or stripping the company. There is no evidence of how much of the proceeds of the
conspiracy went to the Lindgrens. There is no showing that the Lindgrens knew the impact the
stripping of Damifino would have on Rogers. There is no differentiation between the traumatic
effects on Rogers of events that occurred before the Lindgrens' election (e.g., Shannon's alleged
appropriation of Damifino's computer at gunpoint) and events that occurred during their
involvement. We find no evidence in the record that the Lindgrens acted toward Rogers and
Damifino with the malice requisite to support an award of punitive damages. We resolve the
eighth issue in favor of the Lindgrens.

 We reverse the award of punitive damages against the Lindgrens and render
judgment that Rogers and Damifino recover no punitive damages from the Lindgrens. This
decision leaves intact the award of actual damages against the Lindgrens and Franklyn Barker, as
well as the award of punitive damage against Franklyn Barker. We affirm the judgment in all
other respects.



 

 Jan Patterson, Justice

Before Chief Justice Aboussie, Justices Kidd and Patterson

Affirmed in Part; Reversed and Rendered in Part

Filed: August 12, 1999

Do Not Publish

1. Because Franklyn Barker's wife, Shannon Barker, was initially a party to this suit, we will
refer to each Barker by first name when discussing them individually.
2. The Lindgrens contend they did not answer because they did not receive the requests, both
having moved from the address to which Rogers sent the requests. The Lindgrens include in the
appendix to their appellate brief a letter to the trial court from Robert dated June 17, 1998,
asserting that neither of the Lindgrens was served with the requests for admission; the letter was
filed on the day of trial, June 22, 1998. This letter, which also states the Lindgrens knew of the
trial date, is not part of the clerk's record on appeal.
3. Unrefuted evidence shows that the Lindgrens were elected officers of the corporation on
March 6, 1997. The documents attached to their brief showing that they resigned on March 11,
1997 were not in the trial record and therefore cannot be considered.
4. Rule 169 was repealed effective January 1, 1999. These requests for admission were served
on April 27, 1998. By operation of rule, they were deemed admitted well before the repeal
became effective. 
5. Evidence that Rogers owned all of Damifino does not require reversal. If anything, that
might indicate that he should recover more since he would suffer from all of Damifino's losses
rather than just ninety percent of the losses.
6. Rogers's assertion that the Lindgrens' conduct caused his wife to suffer mental problems
from which she has not recovered is not probative because she is not a party to this suit and he
does not assert how her illness injured him.


 fact finder must consider the nature of the wrong, the character of
the conduct, the degree of culpability, the situation and sensibilities of the parties, the
offensiveness of the conduct to a public sense of justice and propriety, and the size of an award
needed to deter similar future conduct. See Alamo Nat'l Bank v. Kraus, 616 S.W.2d 908, 910
(Tex. 1981). The trial record shows that the Lindgrens conspired with the Barkers to deprive
Damifino of $75,000 in cash and assets knowing that Rogers thought he owned the whole
company, and owned at least ten percent of it. Rogers said their actions destroyed him financially
and forced him to sell his house. (6)

 We conclude that no evidence showed that the Lindgrens' conduct was exceptional,
malicious, or outrageous enough to support the award punitive damages. Though Rogers testified
that the Lindgrens knew "that Frank Barker had transferred his ownership interest in the
company" to Rogers, there is no showing of ill will or spite by the Lindgrens toward Rogers or
of a specific intent by the Lindgrens to cause Rogers substantial injury. See, e.g., Oni, Inc. v.
Swift, 990 S.W.2d 500, 503 (Tex. App.--Austin 1999, no pet.). Though the Lindgrens were
Damifino officers, there is no evidence of the degree of their involvement in planning the
conspiracy or stripping the company. There is no evidence of how much of the proceeds of the
conspiracy went to the Lindgrens. There is no showing that the Lindgrens knew the impact the
stripping of Damifino would have on Rogers. There is no differentiation between the traumatic
effects on Rogers of events that occurred before the Lindgrens' election (e.g., Shannon's alleged
appropriation of Damifino's computer at gunpoint) and events that occurred during their
involvement. We find no evidence in the record that the Lindgrens acted toward Rogers and
Damifino with the malice requisite to support an award of punitive damages. We resolve the
eighth issue in favor of the Lindgrens.

 We reverse the award of punitive damages against the Lindgrens and render
judgment that Rogers and Damifino recover no punitive damages from the Lindgrens. This
decision leaves intact the award of actual damages against the Lindgrens and Franklyn Barker, as
well as the award of punitive damage against Franklyn Barker. We affirm the judgment in all
other respects.